UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK A. GIBSON,

       Plaintiff,

v.                                                                                          Case No. 1:04-CV-321
                                                                                            Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on September 13, 1969, completed high school and attended one year of college (AR 61, 83, 261).[1] Plaintiff stated that he became disabled on March 13, 2002 (AR 61). He had previous employment as a stock person, fabricator, paint sprayer, custodian, racker, spot welder and office clerk (AR 17). Plaintiff identified his disabling conditions as diabetes, hypertension, detached retina, swelling of legs and back problems (AR 77). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on August 7, 2003 (AR 16-23). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since March 13,

3

2002, the alleged onset date of disability (AR 22). The ALJ noted, however, that plaintiff was employed as a part-time sales associate at a video store since July 25, 2002 and was currently working in that capacity (AR 18).

Second, the ALJ found that plaintiff suffered from severe impairments of:

> Insulin dependent diabetes mellitus with 1998 Insulin pump placement, December 2001 closed reduction right fibular fracture, March 2002 lumbosacral strain with Toradol injection and May 2002 physical therapy, April 2002 left-eye vitrectomy resulting in mild to moderate field constriction, central macular neurovascular changes secondary to diabetic retinopathy requiring bilateral, April and June 2002 panretinal photocoagulation, obesity (5'9", 230 pounds), proteinuria with a history of chronic renal failure and **no** dialysis, dyslipidemia, hypertensive cardiovascular disease, left ventricular hypertrophy, mitral valve regurgitation and gastro-esophageal reflux disease.

(AR 22) (emphasis in original).

At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 22). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) "for sedentary work, subject to accommodation for work only at table or bench level, no frequent bending or stooping, and no work involving fine acuity, close detail or objects smaller than a 50-cent piece or one-dollar bill (20 C.F.R. 404.1545)" (AR 22). The ALJ further concluded that plaintiff was unable to perform his past relevant work (AR 22).

At the fifth step, the ALJ determined that plaintiff was capable of performing a range of sedentary work reduced by nonexertional limitations (AR 22). Specifically, the ALJ found that an individual with plaintiff's limitations could perform the following jobs in Michigan: inspector (5,000 jobs); cashier (12,000 jobs); and hand packer and sorter (8,000 jobs) (AR 23). The ALJ also found plaintiff's allegations were not totally credible, stating that "[t]he claimant's impairments

reasonably would not be expected to cause symptoms of the intensity or restriction that he asserts (AR 22). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 23).

## III. ANALYSIS

Plaintiff raises four issues on appeal.

> **A.  The ALJ committed a reversible error by unnecessarily and unreasonably discounting the opinion of the claimant's treating doctor in violation of 20 C.F.R. § 404.1527(d)(2) and Social Security Ruling (SSR) 96-2p.**

First, plaintiff contends that the ALJ improperly evaluated the opinions of his treating physician, Mark O'Brien, M.D., by failing to give good reasons for discounting the doctor's opinions. A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give

5

it controlling weight." *Id.*, *quoting* 20 C.F.R. § 404.1527(d)(2).  In summary, the opinion of a treating physician is entitled to great weight, but must be supported by sufficient clinical findings and be consistent with the evidence. *See Melton v. Commissioner of Social Security*, No. 98-5671, 1999 WL 232700, *4 (6th Cir. April 12, 1999); 20 C.F.R. § 404.1526.  Finally, the ALJ must articulate "good reasons" for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

Dr. O'Brien, a renal specialist, filled out a "Diabetes Mellitus Residual Functional Capacity Questionnaire" on June 16, 2003 (AR 250-53).  In this form, the doctor indicated that plaintiff suffered from renal failure and identified the following restrictions: plaintiff can walk one block; sit for 20 minutes at a time; stand for 45 minutes at a time; sit less than 2 hours in an 8-hour workday; stand/walk less than 2 hours in an 8-hour workday; must walk around every 90 minutes; must be able to shift his positions from sitting/standing/walking at will; take an unscheduled break every few hours; when performing sedentary work elevate his feet 1.5' to 2' for 80% of the time; frequently lift less than 10 pounds; occasionally lift 10 pounds; rarely lift 20 pounds; never crouch, squat or climb ladders; rarely twist; occasionally stoop and bend; frequently climb stairs; use his hands to grasp objects for 80% of an 8-hour workday; and use his fingers to perform fine manipulation for 80% of an 8-hour workday (AR 250-52).  The doctor also found that plaintiff was capable of performing low stress work, but that "on average" he was "likely to be absent from work" more than four days per month "as a result of the impairments" (AR 251, 253).

The ALJ gave Dr. O'Brien's opinion "very limited weight" for three reasons (AR 19). First, the doctor provided no basis for these limitations (AR 19).  Second, the doctor's progress notes disclosed no corresponding findings, signs or diagnostic test results that would explain his

6

conclusions (AR 19). Third, the doctor's limitations appeared materially inconsistent with plaintiff's current part-time work at Blockbuster Video (10 to 25 hours per week) and his most recent full-time clerical work (AR 19, 254-66).[2]

Dr. O'Brien's records indicate that he saw plaintiff in April 2001, May 2001 and June 2002 (AR 204-29). However, his records do not contain any clinical testing to establish the functional limitations as set forth in the June 2003 questionnaire. In addition, the doctor's opinion appears inconsistent with plaintiff's work record. Plaintiff listed his disability onset date as March 13, 2002, when he hurt his back performing custodial work at an apartment complex (AR 61, 78, 264 ). Plaintiff testified that he worked as an office clerk from the "spring of 2001" until December 2001 after being laid off from his regular job at an office furniture manufacturer (AR 266-67). The office clerk job involved checking forms for completeness and accuracy and required him to sit for seven hours and to stand for one hour (AR 267-69). Plaintiff was provided a footstool to elevate his leg but stated that his leg would still swell up (AR 268). The ALJ also noted that plaintiff had been working as a part-time video store sales associate since July 25, 2002 for three to five days a week, with his monthly earnings averaging $260 to $650 (AR 18). On average, plaintiff worked a five-hour shift at the video store, standing three hours and sitting two hours (AR 264-65).[3]

---

[2] It is difficult to decipher plaintiff's work record. His testimony at the hearing is not consistent with his work record as stated in his disability report (AR 78) or his work history report (AR 97-109). Plaintiff's work history report states that he was a fabricator, sprayer, hanger of parts and spot welder in a furniture factory from October 1997 through April 2002 (AR 97). He states that he was an office clerk in a furniture factory from April 2002 through December 2002 (AR 97). Plaintiff testified that he left Steelcase in December 2001 rather than December 2002 (AR 266). The ALJ made no finding as to when plaintiff left Steelcase, but noted that he worked for six days in March 2002 as a janitor before hurting his back (AR 18).

[3] The court notes that page 265 was omitted from the administrative transcript filed in this case on January 17, 2005. See docket no. 8. Defendants did not file the missing page until October 17, 2005. *See* docket no. 16.

7

Plaintiff's work duties at these two jobs are inconsistent with the restrictions as set forth by Dr. O'Brien. Plaintiff sat for up to seven hours per day in the office clerk position. At the time of the hearing, the video sales clerk position required plaintiff to stand for three hours and sit for two hours per day. These jobs exceeded Dr. O'Brien's limitation that plaintiff could sit and stand for less than two hours in an 8-hour workday.  Accordingly, the ALJ has provided good reasons for rejecting Dr. O'Brien's limitations.

> **B.      The ALJ failed to follow the requirements of SSR 96-5p when, after determining that the treating doctor provided no basis for his opinion, the ALJ did not "make every reasonable effort to recontact the source [Dr. O'Brien] for clarification of the reasons for the opinion."**

Next, plaintiff contends that the ALJ improperly rejected Dr. O'Brien's opinions without asking the doctor to clarify his opinions.  Plaintiff relies on SSR 96-5p, which provides in a subsection entitled, "Requirements for Recontacting Treating Sources," as follows:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96-5p, www.ssa.gov/OP_Home/rulings/di/01/SSR96-05-di-01.html at p. 5.

In the present case, plaintiff cites no authority to support his contention that the ALJ was bound to recontact Dr. O'Brien.  As the court observed in *Alejandro v. Barnhart*, 291 F. Supp. 2d 497 (S.D. Tex.):

> SSR 96-5p does not say that ALJs must recontact a treating physician whenever the record as a whole (or a treating physician's particular contribution to the record) fails to support his opinions.  To the contrary, SSR 96-5p requires recontact solely when both (a) the record fails to support a treating source's opinion, and (b) the basis of the treating source's opinion is unascertainable from the record.

8

*Alejandro*, 291 F. Supp. 2d at 512. The recontact requirement in SSR 96-5p applies when the ALJ's rejection of a treating physician's opinion is based on the ALJ's inability to determine the basis for the physician's opinion. *Id.* SSR 96-5p does not require an ALJ to recontact a physician where the ALJ rejected the physician's opinion on an absence of evidence to support the opinion. *Id.*

In determining whether it is necessary to remand for a clarification of the record, the court is guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice. *See Bailey v. Barnhart*, 39 Fed. Appx. 430, 434-35 (7th Cir. 2002); *Brown v. Shalala*, 44 F.3d 931, 935-36 (11th Cir. 1995). Absent a gap in the record, the ALJ has no duty to recontact the physician. *See Johnson v. Barnhart*, 138 Fed. Appx. 186, 189 (11th Cir. 2005); *Bailey*, 39 Fed. Appx. at 434-35.

First, the court concludes that SSR 96-5p is inapplicable to the present case. Plaintiff's counsel has not demonstrated the existence of an evidentiary gap. The administrative record contains Dr. O'Brien's treatment records through June 28, 2002 (AR 204-29). Shortly before the hearing, Dr. O'Brien submitted an RFC questionnaire dated June 16, 2003. In the questionnaire, Dr. O'Brien stated the "frequency and length of contact" with plaintiff as "every three months, 1 hour visit" (AR 250). The questionnaire does not state when the doctor last examined plaintiff. However, plaintiff testified at the hearing that he had been seeing Dr. O'Brien for about three years, that he sees him about every three months and that the primary purpose of the checkups is to make sure plaintiff does not suffer from renal failure (AR 303). This testimony suggests that medical records may exist for the time period of June 28, 2002 through June 16, 2003.

Although plaintiff's counsel discussed Dr. O'Brien's RFC at the hearing, he did not advise the ALJ of any additional records in support of the doctor's RFC (AR 259-60). When

plaintiff's counsel requested review by the Appeals Council, he cited the requirements of SSR 96-5p and stated that the ALJ should have asked Dr. O'Brien to clarify his opinion (AR 254-56). Counsel, however, chose not to or could not provide any additional medical records to the Appeals Council, or this court, to show that an evidentiary gap actually exists in the medical record from June 28, 2002 through June 16, 2003 (AR 254-56). It is not appropriate for this court to a remand to allow an ALJ to recontact Dr. O'Brien based solely upon the court's speculation that an evidentiary gap may exist.

The court disagrees with plaintiff to the extent he contends that the ALJ should have clarified the doctor's opinion when he developed the record in this case. The ALJ has a "special duty" to develop the administrative record and ensure a fair hearing for claimants that are unrepresented by counsel. *See Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983) (ALJ must scrupulously and conscientiously explore all the relevant facts when adjudicating claims brought by unrepresented claimant). However, the ALJ does not have this special duty to develop when a claimant is represented by counsel. *See Trandafir v. Commissioner of Social Security*, No. 00-3634, 2003 WL 245341 at *2 (6th Cir. Jan. 31, 2003) (ALJ does not have a "special, heightened duty to develop the record" when the claimant is represented by counsel). *See also Norman v. Commissioner of Social Security*, No. 01-6434, 2002 WL 1354691 (6th Cir. June 19, 2002); *Hall v. Commissioner of Social Security*, No. 98-6102, 1999 WL 685949 at *3 (6th Cir. Aug. 24, 1999).

In the alternative, even if an evidentiary gap existed, plaintiff does not seek a remand to fill in the gap. Rather, plaintiff seeks a remand to allow Dr. O'Brien to clarify his opinion expressed in the RFC questionnaire. *See* Plaintiff's Brief at 9. This is not an appropriate ground for

a remand to recontact a treating physician under SSR 96-5p. As the court explained in *White v. Barnhart*, 287 F.3d 903 (10th Cir. 2001), "it is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the evidence the ALJ receives from the claimant's treating physician that triggers the duty." *White*, 287 F.3d at 908 (internal quotation marks omitted). It is permissible for the ALJ to determine that the information received from a physician is adequate for consideration, but that the physician's conclusion is not supported by the record. *Id.* at 908-09.

Here, the ALJ had a sufficient and adequate record before him to decide the case, but found that the physician's conclusion was not supported by the record. The ALJ reviewed Dr. O'Brien's treatment notes from 2001 and 2002 and concluded that these notes did not support the doctor's opinion (AR 19, 204-29). The ALJ also found that the doctor's limitations were materially inconsistent with plaintiff's current part-time work at Blockbuster Video (AR 19). Accordingly, the ALJ was not required to recontact Dr. O'Brien for clarification of his opinion pursuant to SSR 96-5p.

>   **C.   The ALJ failed to prove that a significant number of jobs exist in the national economy that the Plaintiff could perform because the expert vocational testimony established that no sedentary jobs exist that will accommodate the Plaintiff's needs to elevate his legs.**

Next, plaintiff contends that the ALJ ignored vocational evidence that would have eliminated the availability of the 25,000 jobs identified by the vocational expert (VE). An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a

vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

Here, plaintiff points to the following hypothetical question and answer as evidence that he cannot perform any of the 25,000 identified jobs:

> ALJ: Now let's take into account other additional non-exertional limitations that I haven't talked about yet. Let's assume that this person needs to elevate his feet one-and-a-half to two feet per Dr. O'Brien's RFC. Does that erode or eliminate the availability of the jobs that you cited?
>
> VE: Judge, I think with that height of elevation, it really would erode all of those jobs.

(AD 301). While the VE's answer to this hypothetical question would eliminate the 25,000 jobs, the ALJ rejected the underlying restriction, i.e., that plaintiff needed to elevate his feet (AR 19, 22). The ALJ was not obligated to incorporate this limitation into the hypothetical question or include it as part of plaintiff's RFC where it was the unsubstantiated finding of a single doctor. *See* discussion in Section III.A., *supra*. Accordingly, the ALJ could properly decline to adopt the VE's testimony on this restriction.

>   **D.      The ALJ failed to follow the requirements of SSR 00-4p because he never inquired on the record whether there was any inconsistency between the testimony of the vocational expert and the Dictionary of Occupational Titles (DOT).**

Finally, relying on the opinion in *Teverbaugh v. Commissioner of Social Security*, 258 F. Supp.2d 702, 705-06 (E.D. Mich. 2003), plaintiff contends that the ALJ failed to meet his burden at step five of the sequential evaluation and committed error requiring reversal when he relied exclusively on a vocational expert's testimony at step five without determining whether the testimony was consistent with the DOT. Plaintiff's Brief at 10-11. This court has rejected the reasoning as set forth in *Teverbaugh*. *See Brian S. Williams v. Commissioner*, No. 1:04-cv-438 (W.D. Mich.) (order adopting report and recommendation 8/5/05). In *Williams*, the undersigned stated in pertinent part as follows:

> The court disagrees with both the court's reasoning in *Teverbaugh* and plaintiff's contention that the ALJ has an affirmative responsibility to inquire into a possible conflict between the VE and the DOT. By requiring the ALJ to affirmatively question the VE's opinion at every administrative hearing, both plaintiff and the *Teverbaugh* decision imply that VE's opinion always conflicts with the DOT and that the DOT controls. Plaintiff's presumption that the VE's opinion is presumptively inconsistent with the DOT is unwarranted. The Sixth Circuit has rejected the argument that the Commissioner is bound by the DOT's characterization of occupations, holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's definitions." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003). *See also Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir. 1995) (same).[4]
>
> In *Donahue v. Barnhart*, 279 F.3d 441 (7th Cir. 2002), the court stated that the DOT "does not purport to contain rules of law, and no statute or regulation gives it binding force." *Donahue*, 279 F.3d at 445. The court discussed its approach for addressing the situation, like the present case, where neither the ALJ nor the plaintiff

---

[4] The Sixth Circuit shares this position with the Fifth, Seventh and Eleventh Circuits. *See Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir. 2002)

identified a discrepancy between the VE's testimony and the DOT at the time of the hearing:

> What, then, happens when the discrepancy is unexplored? When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the *Dictionary's*--for the *Dictionary*, after all, just records other unexplained conclusions and is not even subject to cross-examination. If the basis of the vocational expert's conclusions is questioned at the hearing, however, then the ALJ should make an inquiry (similar though not necessarily identical to that of [FRE]Rule 702) to find out whether the purported expert's conclusions are reliable. Social Security Ruling 00-4p, promulgated in December 2000 (and thus not directly applicable to this case), is to much the same effect. This ruling requires the ALJ to "[e]xplain [in the] determination or decision how any conflict [with the Dictionary] that has been identified was resolved." (Emphasis added.) The ruling requires an explanation only if the discrepancy was "identified"--that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation. Raising a discrepancy only after the hearing, as Donahue's lawyer did, is too late. An ALJ is not obliged to reopen the record. On the record as it stands--that is, with no questions asked that reveal any shortcomings in the vocational expert's data or reasoning--the ALJ was entitled to reach the conclusion she did.

*Donahue*, 279 F.3d at 446-47.

Under SSR 00-4p, the ALJ has a duty to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence."  While the ALJ has a duty to develop the record, the court does not view SSR 00-4p as requiring the ALJ to affirmatively interrogate the VE in order to establish that no potential conflicts exist between the VE's testimony and the DOT.  As the court pointed out in *Buchholtz v.Barnhart*, No. 03-3235, 2004 WL 1088252 (7th Cir. May 12, 2004) at *6, "counsel has the responsibility for raising the issue [of a discrepancy under SSR 00-4p] if the ALJ does not." In the present case, neither the ALJ nor  plaintiff's counsel identified any discrepancy between the VE's testimony and the DOT at the hearing.  There was no reason for the ALJ to inquire as to whether the VE's testimony was consistent with the DOT. Accordingly, plaintiff's claim on this issue should be denied.

*Williams*, 1:04-cv-438 (report and recommendation 7/15/05).

14

Accordingly, for the reasons as set forth above, the court rejects plaintiff's claim of error at step five of the sequential evaluation.

## IV. Recommendation

I respectfully recommend that the Commissioner's decision be affirmed.


Dated: January 25, 2006                    /s/ Hugh W. Brenneman, Jr.
                                           Hugh W. Brenneman, Jr.
                                           United States Magistrate Judge




ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).